Good morning, your honors. I would like to reserve two minutes of my time. May it please the court. Appellant is asking this court to enter a judgment, asking the trial court to reverse the ruling and enter a judgment in favor of the appellant that the unlawful stop of the appellant and the unlawful arrest for driving under the influence was not a valid stop in light of the fact that the appellant was not driving at the time. Your honors, a lawsuit is not a moving target and what has happened in this particular case where the trial judge ignored the case that was presented to him at summary judgment and asked for briefing on an issue that was not the basis for the arrest and then asked both sides to do a briefing in a brief that eliminates any possibility of due process as far as the evidence that Officer Richwine had at the time of the incident. Instead of addressing the issue of whether or not my client was driving under the influence and which she was not, he asked the parties to change the facts of the case, change the state of mind of the officer, and to do a briefing on whether or not my client was publicly intoxicated. So the counsel in a probable cause determination, which is what we were looking at, the state of mind of the officer is not relevant. No dispute with that, Madam Justice. The point here is that the court implied his state of mind, his knowledge, based on the briefing that was done. There was no evidence from the officer that would support the judge's reasoning. When we found the final ruling came out, the judge articulated his particular viewpoint of the facts. Here's the difficulty I'm having with your argument. The Supreme Court has said that probable cause may be predicated upon the violation of a statute that's not originally given as the cause for arrest. So the district court judge had the option under the law of exploring additional potential violations to determine if there's probable cause. And what was wrong with that? There's no problem with that. We're disputing that the facts that he articulated, we're saying that he had no – we're not arguing his right to consider an alternative crime. We're not arguing that. We're looking at the fact pattern which he relied upon to basically render this decision. Are you saying that the court relied on facts that were not in the record? I'm saying, Madam Justice, that he relied on his own. It's judge. I'm sorry, Madam Judge. I apologize. That's okay. I'm saying that he relied on his own respectfully predisposed opinion of the case for him to, at the time of the ruling on the initial cause of action, he suggested a possible charge. And there's no argument with that. The argument is what he came up with his factual conclusion. Can you be specific? You're talking about this as conclusion. Can you – what are the different facts that you think he came up with? Yes. He said here in my brief on page 24, I copied the ruling. He stated, in the case of Barr, there is that Peters was unstable and had to brace herself against a van. This is when she was awakened. And even though she was swayed, she failed the sobriety test, she had the smell of alcohol, and she blew nearly three times the DUI limit. And further, Peters was found asleep in the van, which may have been a result of alcohol. This is speculation that she ingested. And that when Richwine awakened her, the smell of alcohol. And it also said that she was, given the volumes of cars that were on Interstate 5, that there might be a danger while her car was pulled to the side. But he was referencing the parties' undisputed material facts, right, when he was making those statements? Respectfully, in his ruling, he cites no separate statement of facts. I, in my brief on page 24, I cite those references in which he articulates. But he does not refer to the separate statement. And I think we can agree that the separate statement is the factual issues that are at dispute. But if you look at his ruling, he makes no reference. If I can take them. Could we look at page 3, line 8 of the judge's opinion? He says, while talking to Peters, Richwine observed that she was having some difficulty standing upright, smelled like alcohol, and exhibited other signs of intoxication, and he cites the material facts. Yes. He cites, I think he cites two particular facts. In response to that issue is that Peters was asleep in her car, committing no crime, and was awakened by the officer when her car was pulled to the road. So if we're talking about the basis for 647 is a person drunk in public, let's find – let's look at what Peters was doing at the time. She was in the backseat of her car. Her car was inoperable. So she could not pose a danger to other motorists. But haven't the California courts determined that individuals are just simply sleeping in their vehicles were subject to arrest under that 647F? Respectfully, those situations involve motorists who had the ability to drive a vehicle, an operating vehicle. Here, the car that is at issue was inoperable. She had the ordinary care to move the car to the side of the road. That sounds – Hadn't she driven it to some gas station and then come back? Initially, the car was working. Yes. Initially, after she went to the gas station, the car failed to operate for the second time. Knowing that she was on the road, she pulled the car to the side of the road, knowing that the car could no longer operate. Okay. Now, is the fact – is it undisputed or disputed whether Officer Redwine knew? Didn't he have information that she had moved the car, come back? Would he have known that it was inoperable? Well, Officer Redwine was the individual officer who initially stopped the vehicle. I know. That's what I said. So he had knowledge of the condition of the car when he came back the second time from the fact that he had personal knowledge that the car had an operational problem. Let me just back you up. I think I know the facts. She was on I-5. She's driving. Car problem. She pulls over. Redwine comes along, gives her assistance. She then, after he leaves, she gets in the car, does she not, and drives to a gas station. Yes. And then so the car is – he pushed her there, right? Yes. Okay. So he knows that the car had been moved from where he found it the first time. Yes. And then he comes back and the car is back there. Now, would he have reasonably inferred from that that the car was operable? I would think that the answer would be no, respectfully, because the car was not – the fact that he found the car again and the car was not operating, I would think that he would conclude that there must have still been additional car problems. Or she drove back for some reason, but why would she have gone back? I couldn't figure out why she went back. In any event, the car had obviously been in transit somehow. Yes. It's unlikely that some tow truck towed her back to a remote spot on I-5. Exactly. So it seems reasonable for the officer to assume that the car had been fixed and she had somehow decided to come back and park alongside of the road. He would not have assumed that the car was inoperable just because she's by the side of the road. In fact, I assume officers stop frequently to find out why they are. I would concur with that. Okay. The point that I would also state as well is that the officer said that the time that he came back a second time, he observed no criminal activity on the part of Ms. Peters. None. No criminal activity whatsoever. He found her in the back seat sleeping. And that is a significant – But didn't he find some brown liquid in the – Yes. His mom or something like that? Right. And when she knocked on the window to ask her what's going on, she was startled. She was sleeping in the back seat of the car. But no criminal activity whatsoever involved. And, yes, she did admit that she had a drink in that – from that cup and she went to sleep. But the key here is that the observation of this person being in harm's way or any type of criminal activity on the part of Ms. Peters. And I think that's important because the statute in which the Court considered was a person displaying some type of drunken behavior or some person who couldn't take care of themselves. In my paper, and I'll close with this, is that there are numerous examples of people at football rallies, people celebrating at Times Square. That type of case – that type of argument would be applicable there. But there is no criminal activity whatsoever on the part of my client. Thank you. You can have a minute for rebuttal.  Good morning. My name is Kevin Rager. I'm with the California Office of the Attorney General, and I'll be presenting oral argument on behalf of the appellee, Officer J.P. Grichwine. Counsel started by saying that there was no evidence whatsoever that Ms. Peters posed a danger to herself or other people because the car was inoperable, and that when Judge Ishii made his ruling from the district court, he relied on evidence that isn't in the record. Well, that simply isn't true. Officer Grichwine, in his declaration that was submitted in support of the original motion, specifically found and said, based on how intoxicated she was, that he formed the belief that she posed a danger to herself and that she wasn't able to care for herself. And that was in the original declaration, and that can be found in the record, in the supplemental excerpts of record at page 51. He makes that specific finding. So Judge Ishii looked at that, and he said, based on the Devenpeck case, that what we're looking at is an objective standard. The officer is not required to write down every single potential crime that a person has committed when they write out the citation. That's what the district attorney's office does. The officer makes the arrest. The officer lists the reason or some of the reasons why they've made the arrest, and they write a police report. That goes to the district attorney's office, and then the district attorney does the investigation and makes determinations about what the potential violations are and what the defendant should or should not be prosecuted for. But still, the officer has to have probable cause that some criminal violation has occurred. That's correct. And any violation. So to say that the ---- Not any violation. It must be something that's within the realm of the statute upon which the officer relied. It can't just be failure to walk your dog on a leash in these circumstances, could it? Well ---- It doesn't have to be somewhat in the same ballpark as the one the officer used as the basis for probable cause. Technically, no. Under Devenpeck, it's a purely objective standard. You take the facts that were known by the officer at the time, and if those facts establish probable cause for the commission of any crime ---- Well, but again, I think your ---- I think your answer to Judge Wallinson has to be, yes, it has to be in the ballpark, because it has to be predicated on facts. Facts generate a limited list of potential crimes. So, you know, you can't ---- Yes. You can't charge it for abuse of an animal if there's no animal there. That's correct. So the abuse in that scenario, the abuse of an animal would not be any type of a fact that was known to the officer at the time. You said any crime. That was the part that gave me pause. You said she could be charged for any crime. Based on the facts known to the officer. So it is perfectly appropriate for a court to look at the facts that were known to the officer based on his declaration and the other evidence that was submitted and say, even though he said DUI, it's not really a DUI. Now, if he had said, found dead dog in back of car, she had bloody knife in hand and busted her for DUI, then, yes, the court could still go back and say, that's abuse of an animal, if that was known to the officer at the time, even though it's unrelated to the offense that the officer actually charged. And so in this instance, he specifically found that she posed a danger to herself and to others because of how drunk she was. She failed all of her field sobriety tests. She blew a .21 and a .23 on the side of the road. And it's Interstate 5, the heaviest traveled roadway in the state of California. And so she was falling down drunk when he came across her the second time. And at that point, for her own protection and for the protection of others, he had to take her into custody. Now, Mr. Terrell raised the issue of what he believes is a procedural infirmity in terms of the court asking for further briefing with regard to Penal Code Section 647F. If you take a look at the Portsmouth Square case, which is cited in our brief, in that case, the court actually granted a sua sponte summary judgment during a pretrial conference when the parties submitted their joint statement of undisputed facts. The court looked at that on its own and with no notice to either side said, you know what, if these are the facts that are undisputed, they win. And there was no notice given to the other side, no opportunity to be heard or to brief the issue, and that was upheld on appeal because the court has the right to control its own calendar. The court is not forced to try every single case because the parties didn't say any particular magic words. The court's allowed to do that. And in this case, Judge Ishii went one step further. Not only did he recognize that there were other potential offenses that were committed, he gave the parties notice and opportunity to submit additional evidence if they wanted to, to submit briefing on the issue. So they had every opportunity possible for them to look at that particular code section and to submit additional evidence if they wanted to. Now, they did do an additional brief. They did not submit any additional evidence. They stood on the record as it was, despite the notice and the opportunity from Judge Ishii, that he was concerned about 647F. Counsel, may I ask you if you're familiar with our recent case of Rosenbaum v. Washoe County? Your Honor, I don't recall that case off the top of my head. It's very recent, and it goes to the point of what crime can be charged in a probable cause. And it says that it cannot be that probable cause for a warrantless arrest exists so long as the facts may arguably give rise to probable cause under any criminal statute on the books, even if the crime is buried deep in a dust-covered tomb and never charged or prosecuted. So it seems that we're saying that you can't just, after the fact, go and look for an arcane crime and charge it, even if the facts support it. So I just commend that for your reading on the issue of how far the Court can go in allowing probable cause to be determined on the subsequent statute. Thank you, Your Honor. And I realize this Court, within even the last two weeks, has released several new decisions involving qualified immunity and what clearly established law is in various arenas. So I have been reading day and night with all the new opinions that have been coming out recently.  And so in this particular case, Officer Richwine tried to render assistance to Ms. Peters. And the second time, when he tried to render assistance to her, and she was falling down drunk, and she's on the side of the major interstate, and Officer Richwine didn't just rely on his own judgment. He called the officer in charge, his shift commander, who came to the scene, who observed Ms. Peters, who rendered assistance then to Officer Richwine in his decision-making. And not only did he render assistance, but Officer Heckman, who was the officer in charge who was there, he also contacted the tow truck driver who had helped Ms. Peters earlier to bring her gas and to direct her to the gas station. And Mr. Garza, the tow truck driver, reported that she was drunk then, at 5 o'clock, when he helped her. And he saw her drive the car. And although he was leading her to the gas station, when he pulled off to go to the gas station, she was right on by the exit, and he never saw her again. So Mr. Garza reported that she was drunk at 5 o'clock. So when he came back then, Officer Richwine, at 9.15, observes the car. It's clearly been moved. She's asleep in the backseat. And under California law, we have two cases. We have the Bellinger case, and we have the Mardis case. And Mardis is almost directly on point. In that case, the individual was drunk, sleeping in the backseat of the car, with the keys in his pocket, just like Ms. Peters was. And there, the officer opened the door to see if the person needed assistance, determined that he was drunk, and so drunk, based on his slurred speech and red bloodshot eyes and the smell of alcohol, determined that he was so drunk that he posed a danger to himself and others. And the California Supreme Court said that's sufficient evidence to arrest somebody under 647F. And that's what we have in this instance. Thank you. I think the last portion of my colleague's statements were facts or statements that were not part of Judge Ishii's ruling. But I'd like to point out one factor, if I may, in my last minute. This issue of the initial stop, which was based on driving under the influence, in which the judge did not find any evidence, that is a law that relies upon the importance of preventing drivers driving a vehicle to prevent possible injuries to others and possible death. The relationship of that charge versus the charge that Judge Ishii filed, this obeying or drunk in public, there is a tremendous difference in the purpose of driving under the influence a motor vehicle and being arrested for being drunk in public. There is the person that doesn't have that vehicle. And that's a major distinction between those two statutes. They're so far unrelated. The legislative intent behind stopping individuals from driving out with a vehicle, which the judge did not find any evidence, and then searching for something else so unrelated, in and of itself requires this Court to honestly consider reversing that decision and entering a ruling in favor of the appellant that the charge of driving under the influence cannot stand. Thank you very much.
judges: Mills, Fisher, Rawlinson